UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORINIA

| | |
|---|---|
| GUADALUPE M.,[1] <br><br>　　　　　　　　　　Plaintiff, <br><br> v. <br><br> LELAND DUDEK, *Acting Commissioner of the Social Security Administration*,[2] <br><br>　　　　　　　　　　Defendant. | Case No.: 23cv1872-MSB <br><br> **ORDER** |

　　　　On October 12, 2023, Plaintiff Guadalupe M. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner"), which denied his application for social security disability insurance benefits and supplemental security income.  (ECF No. 1 ("Compl."), at 1.)  For the reasons set forth below, the Court **ORDERS** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings.

---

[1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

[2] Leland Dudek became the Acting Commissioner of Social Security in February 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## I. PROCEDURAL BACKGROUND

On May 18, 2021, Plaintiff filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, alleging disability beginning on March 20, 2021. (AR[3] 306, 313.) His applications were denied initially on September 9, 2021 and upon reconsideration on February 2, 2022. (AR 184, 202.) On March 14, 2022, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was then held on August 17, 2022. (AR 209, 54-81.) On August 30, 2022, ALJ Laureen Penn denied Plaintiff's application after four levels of review. (AR 15-35.) The Appeals Council denied Plaintiff's request for review on August 30, 2023, making the ALJ's decision the final decision of the Commissioner. (AR 1-9.) On October 12, 2023, Plaintiff filed the instant civil action in this Court seeking review of the Commissioner's final decision. (ECF No. 1.) Pursuant to the Court's briefing schedule, Plaintiff timely filed the Merit Brief on March 14, 2024 [ECF No. 13 ("Mot.")] and Defendant timely filed the Responsive Brief on May 15, 2024 [ECF No. 17 ("Opp'n")].

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering her decision, the ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. § 404.1520. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 31, 2022, the alleged onset date. (AR 23.) At step two, the ALJ found Plaintiff had the following severe impairments that significantly limit his ability to perform basic work activities: "lumbar degenerative disc disease and dextroscoliosis, ischemic cardiomyopathy status/post-non ST-elevated myocardial infarction (NSTEMI), and obesity (20 CFR 404.1520(c) and 416.920(c))." (AR 24.) The ALJ also noted Plaintiff's alleged impairments of "allergic rhinitis, hypertension, and tinnitus," but found they were non-severe because they "cause no more than a minimal impact on the claimant's ability to carry out work-related activities on an ongoing basis." (Id.) The ALJ further found

---

[3] "AR" refers to the Administrative Record filed on December 8, 2023. (ECF No. 8.)

Plaintiff did not have a severe mental impairment, as the evidence supported no more than mild mental limitations in his "understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing [him]self." (AR 24-25.)

At step three, the ALJ found that, although Plaintiff has severe impairments, "medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (AR 25.) The ALJ then found Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can stand and walk for 6 hours and can sit for 6 hours; the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but cannot climb ladders, ropes, or scaffolds or have concentrated exposure to hazards such as unprotected heights and dangerous moving machinery.

(AR 26.) At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a construction worker. (AR 29.) Finally, the ALJ proceeded to step five of the sequential evaluation process. The ALJ noted the vocational expert's testimony that a hypothetical individual with Plaintiff's vocational profile and RFC could perform the requirements of other occupations that exist in significant numbers in the national economy, such as housekeeping cleaner, inspector, small products assembler, and garment sorter. (AR 30.) These occupations require the ability to perform sedentary, unskilled work. (Id.) Thus, the ALJ concluded Plaintiff was not disabled, as defined by the Social Security Act from December 31, 2022, through the date of the decision, and denied his applications for disability insurance benefits and supplemental security income. (AR 31.)

### III.   DISPUTED ISSUES

Plaintiff raises the following issues as grounds for reversal and remand:

    A. Whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's subjective complaints and allegations of pain and physical dysfunction.

    B. Whether the ALJ failed to consider the established impairment of anxiety disorder, resulting in an incomplete residual functional capacity assessment.

(Mot. at 1).

## IV.    STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision. Id. The reviewing court may also remand the case to the Social Security Administration for further proceedings. Id.

The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error. Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (citation omitted)). "Substantial evidence means more than a mere scintilla but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).

The ALJ's decision may also be reversed if it applies the wrong legal standard, but the reviewing court "may not reverse an ALJ's decision on account of an error that is harmless." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (quoting Molina, 674 F.3d at 1111).

## V.   DISCUSSION

### A. Whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom allegations

#### 1. Summary of the parties' arguments

Plaintiff first argues that the ALJ failed to provide specific, clear, and convincing reasons for discounting his allegations of pain and physical dysfunction.  (Mot. at 11.) Plaintiff asserts that, while the ALJ recognized that Plaintiff had lumbar degenerative disc disease and dextroscoliosis, ischemic cardiomyopathy status/post NSTEMI, and obesity, the ALJ merely cited the medical evidence "without connecting how any particular finding undermines Plaintiff's reported symptoms." (Id. at 12-13.)  According to Plaintiff, the ALJ's failure to adequately consider his symptoms led to an insufficient RFC because it did not include Plaintiff's subjective symptoms.  (Id. at 15.)  Although Plaintiff appears to make a general assertion that the ALJ failed to consider all of his subjective symptom testimony, he focuses on testimony regarding his vertigo and dizzy spells.  (AR 13-15.)

The Commissioner asserts that the ALJ reasonably found that Plaintiff's subjective complaints were inconsistent with the objective medical evidence in the record.  (Opp'n at 8.)  Furthermore, the Commissioner argues that Plaintiff's own "denials of dizziness and vertigo over the course of his treatment contradicted his testimony that these symptoms were disabling." (Id. at 9.)  Therefore, the Commissioner maintains that the ALJ did not arbitrarily discredit Plaintiff's testimony, and the ALJ's decision is free of error.  (Id. at 12.)

#### 2. Applicable law

When evaluating claimant's allegations regarding subjective symptoms, such as pain, the ALJ must engage in a two-step analysis.  See Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996), superseded, in part, on other grounds by 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029 (Mar. 16, 2016).   First, the ALJ must determine whether there is objective

medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014)). The claimant is not required to show that an underlying impairment could reasonably be expected to cause the severity of the pain alleged, but only that it could have reasonably caused some degree of the pain. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Second, if the first step has been satisfied and there is no evidence of malingering, then the ALJ may reject the claimant's statements about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014–15). "The clear and convincing standard is the most demanding required in Social Security cases." Revels, 874 F.3d at 648 (quoting Garrison, 759 F.3d at 1014–15). General findings are insufficient, and the ALJ must identify which specific pain and symptom statements are being discounted and what evidence undermines those claims. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)); Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). An ALJ's failure to identify specific statements and explain why they are not credible precludes meaningful review because the reviewing court cannot determine if the ALJ's decision was supported by substantial evidence, which constitutes reversible error. Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015); see also SSR 16-3p.

### 3. Plaintiff's testimony

Plaintiff testified at the administrative hearing that he stopped working as a labor worker because of "[a]nxiety, plus the heart attacks . . . , [his] back, vertigo, dizziness, and a host of other things." (AR at 61.) When pressed about the "other things," Plaintiff testified that he would "just go out to the sun and . . . start getting very dizzy, agitated, [anxious,] . . . forgets things, [and he's] afraid to go out because of what might happen."

(Id.) He also said that his vertigo and back make it difficult to concentrate, focus, and deal with people. (Id. at 65.)

When asked about how often and how long he has vertigo episodes, Plaintiff stated that he experiences vertigo episodes daily that last about an hour. (Id. at 64.) His doctor told him this would occur "for life." (Id. at 70.) To feel better, he testified that he needs to sit down. (Id. at 65.) Due to his dizziness and vertigo, plaintiff alleged that he could not do a simple, sit-down job. (Id.)

### 4. The ALJ's findings

The ALJ acknowledged that Plaintiff alleged difficulty with lifting, squatting, bending, standing, reaching, and kneeling, as well as ongoing vertigo and dizziness. (AR 27.) In assessing Plaintiff's subjective allegations, the ALJ observed that his statements "about the intensity, persistence, and limiting effects of his symptoms . . . give rise to some limitations." (AR 28.) However, the ALJ found that "his alleged difficulty with dizziness, vertigo and using his hands and assistive devices, is not entirely consistent with the evidence." (Id.) She explained that, while claimant complained of dizziness and vertigo at times, which were treated with meclizine, he generally denied the same on multiple occasions, "especially later in the record." (Id. (citing AR 659, 672, 1019, 1028, 1032, 1072, 1084, 1098, 1118, 1721, 1729, 1733, 1742).) Accordingly, she found that Plaintiff's testimony and allegations did not support additional limitations:

> In sum, while the ALJ finds support for some of the claimant's allegations, they are not supported by the evidence of record to the extent that they suggest a more restrictive residual functional capacity than found above, as indicated by the foregoing.

(AR at 29.)

### 5. Analysis

Because the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," the first prong of the ALJ's inquiry into Plaintiff's subjective symptoms is satisfied. (See id. at 26.) As a result, the Court must determine whether the ALJ identified the testimony that she

discredited, and whether the ALJ provided specific, clear, and convincing reasons for doing so. See Brown-Hunter, 806 F.3d at 489; Trevizo, 871 F.3d at 678; Garrison, 759 F.3d at 1014-15.

The Court finds that the ALJ appropriately assessed Plaintiff's testimony here. First, the ALJ sufficiently identified the discredited testimony by recognizing that Plaintiff "alleged difficulty with dizziness, [and] vertigo . . . ." (AR 28.) She then explained that this subjective symptom testimony was only partially consistent with the evidence because Plaintiff was being treated with meclizine and he generally denied these symptoms during multiple visits. (Id.)

Although the ALJ may not use the absence of objective medical evidence to disregard a plaintiff's subjective symptom testimony, objective medical evidence that is contrary to such testimony would be a specific, clear, and convincing justification. See Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022). Here, the ALJ presented evidence that was directly contrary to Plaintiff's allegations. Plaintiff criticizes the ALJ's interpretation of the record as "patently false" because she implies that he "magically" recovered after he stopped complaining of his dizziness around April 2022 to August 2022. (Mot. at 14.) But the ALJ makes no such finding. The ALJ acknowledges Plaintiff very well may be experiencing dizziness and vertigo, but notable portions of the medical record contradict his statements regarding the severity of his dizziness and vertigo. (AR 28.) Indeed, Plaintiff's history of denials spans from March 2021 to August 2022. (See AR 659, 672, 1019, 1028, 1032, 1072, 1084, 1098, 1118, 1721, 1729, 1733, 1742.) Plaintiff even cites portions of the record where he explicitly denies dizziness and vertigo. (See Mot. at 14 (citing AR 1060, 1724, 1725, 1734, 1742).) Though Plaintiff characterizes these as examples where he is neither affirming nor negating feeling dizzy, the record shows Plaintiff expressly denied dizziness and vertigo at those respective visits. (See AR 1060, 1723, 1725, 1733, 1742 (all stating that the patient "denies: dizziness, vertigo").) While Plaintiff may have meant that such general denials were inconsequential because his primary focus at these visits were for pain, the ALJ

reasonably interprets such denials as denials.[4] Because Plaintiff testified at the hearing that he has vertigo episodes daily and for an hour long, one would reasonably expect that he would report such symptoms more consistently.

The Court must defer to the ALJ's conclusions when the evidence is susceptible to more than one rational interpretation. Tommasetti, 533 F.3d at 1038. Here, the ALJ's findings were rational interpretations of Plaintiff's medical record and his conflicting testimony. Because the ALJ's decision to partially discredit Plaintiff's testimony is supported by substantial evidence, and her analysis was free of legal error, the Court affirms her findings. Id.

**B. Whether the ALJ failed to consider Plaintiff's anxiety disorder as severe and thus created an incomplete residual functional capacity assessment**

**1. Summary of the parties' arguments**

Plaintiff's second issue has two discrete parts: (1) the ALJ incorrectly concluded Plaintiff's anxiety was non-severe and (2) the RFC is not supported by substantial evidence because the ALJ failed to include Plaintiff's anxiety. (Mot. at 16-19.) Plaintiff contends that the ALJ's severity analysis was flawed because she failed to evaluate evidence regarding physical manifestations of his anxiety disorder. (Id. at 16-17.) Plaintiff argues that the ALJ's failure to include his severe impairment resulted in an incomplete RFC. (Id. at 19.)

In response, the Commissioner says the ALJ found that normal mental status examination findings, Plaintiff's activities, and the medical opinion evidence indicated that he did not have a severe mental impairment. (Opp'n at 13.) The Commissioner maintains the ALJ appropriately considered Plaintiff's anxiety disorder but found that it did not cause more than minimal limitation to his ability to work. (Id. at 16-17.)

---

[4] This argument is further undermined because, on two occasions where Plaintiff affirmatively complained of "some dizziness and nausea," he simultaneously complained about his back pain. (See AR 1071, 1074.)

### 2. Applicable law

The ALJ determines the severity of a claimant's physical or mental impairments at step two of the disability evaluation. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); see also 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ must follow the "special psychiatric review technique" when assessing the severity of mental impairments. See id. § 404.1520a(a); Keyser v. Comm'r, Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011).

Under the special technique, the ALJ first determines whether the claimant has a medically determinable mental impairment and then rates the degree of functional limitation resulting from that impairment in the following functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. See id. (citing 20 C.F.R. § 404.1520a(c)(3)). The ALJ will rate each functional area on a five-point scale: none, mild, moderate, marked, or extreme. See 20 C.F.R. § 404.1520a(c)(4). In making this assessment, the ALJ's "'written decision must incorporate the pertinent findings and conclusions based on the technique' and 'must include a specific finding as to the degree of limitation in each of the functional areas.'" Keyser, 648 F.3d at 725 (citing 20 C.F.R. § 404.1520a(e)(4)).

The RFC is a claimant's ability to do work-related activities on a sustained basis (i.e., eight hours a day, five days per week). Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). Thus, it represents the maximum amount of work a claimant can perform despite their limitations, based on all relevant evidence in the record. See 20 C.F.R. § 416.945(a)(1); 20 C.F.R. § 404.1545(a)(1). In making this finding, the ALJ must consider all the claimant's medically determinable impairments, including those that are non-severe. See 20 C.F.R. § 404.1545(a)(2); see also Buck, 869 F.3d at 1049 (quoting SSR 96-8P, 1996 WL 374184, at *5). "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." Buck, 869 F.3d at 1049.

The Ninth Circuit has generally held that "an RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009); see also Samples v. Comm'r Soc. Sec. Admin., 466 Fed. App'x 584, 586 (9th Cir. 2012).

### 3. The ALJ's findings

The ALJ first acknowledged that Plaintiff had medically determinable mental impairments of depressive disorder and anxiety disorder but found that they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere[sic]." (AR 24). The ALJ concluded that the record did not show Plaintiff had more than a "mild limitation" in any of the four functional areas. (Id.) She explains that Plaintiff's July 2021 consultative examination showed that he was able to recall two of three items after a five-minute delay, but his memory was otherwise normal. (Id.) Plaintiff "exhibited normal behavior and was cooperative with examiners and treatment providers" and "generally presented with a normal mood albeit with a mildly anxious affect at times . . . ." (Id.) He also "retains the capacity to prepare meals, drive a car, watch television, and complete housework . . . ." (Id.) The ALJ further cited the opinions of Jerry Livesay, Ph.D., who reported that Plaintiff had a mildly impaired ability to follow detailed instructions and perform daily activities, and Susan Posey, Psy.D., who found that Plaintiff had no severe mental impairments or associated limitations. (AR 25).

The ALJ concluded Plaintiff had the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can stand and walk for 6 hours and can sit for 6 hours; the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but cannot climb ladders, ropes, or scaffolds or have concentrated exposure to hazards such as unprotected heights and dangerous moving machinery.

(AR 26.) In reaching this finding, the ALJ explained that she considered all of Plaintiff's symptoms and the extent to which they can reasonably be accepted as

consistent with the objective medical evidence and other evidence, as well as medical opinions and prior administrative medical findings. (Id.)

As part of his RFC analysis, the ALJ discussed the medical evidence, noting Plaintiff's history of cardiac impairments, lumbar degenerative disc disease, obesity, and alleged difficulty with dizziness and vertigo. (AR 26–27.) Notably, the ALJ did not discuss any of Plaintiff's medically determinable mental impairments in her RFC assessment but instead stated in her step two discussion that the "[RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (AR 25.)

### 4. Analysis

#### a. The ALJ's application of the special technique was flawed

Plaintiff argues that the ALJ first erred by not considering Plaintiff's anxiety disorder to be severe. (Mot. at 16.) Although Plaintiff applies the de minimis screening test [Mot. at 17], the correct test for severity in psychiatric conditions is the special technique. 20 C.F.R. § 404.1520a(a); Keyser, 648 F.3d at 725. The ALJ must rate the degree of limitations, using the five-point scale, regarding Plaintiff's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3-4). The ALJ must include these findings and specific degrees of limitations in her written decision. Keyser, 648 F.3d at 725 (citing 20 C.F.R. § 404.1520a(e)(4)).

The ALJ's discussion of Plaintiff's anxiety was vague. Although the Commissioner contends the ALJ properly considered Plaintiff's anxiety disorder [Opp'n at 15], the ALJ did not give specific ratings for each functional area but instead concluded that Plaintiff "has no more than mild limitations in any area." (AR 24.) This does not pass muster as a specific finding because any given functional area could have either a "none" or "mild" rating.

The Plaintiff further argues that the ALJ should have evaluated "evidence regarding the physical manifestations of the [anxiety] disorder . . . [,]" but such

1  evaluation is not necessary.  (AR 17.)  Plaintiff only cites SSR 85-28 in making this
2  argument, which states the ALJ must evaluate "effects of the impairment on the
3  person's ability to perform basic work activities."  While the ALJ certainly could consider
4  "physical manifestations" of Plaintiff's mental impairments, Plaintiff does not provide
5  legal authority that mandates as such.  The ALJ was required to follow the special
6  psychiatric review technique, and though her findings did not meet the specific ratings
7  requirement, she otherwise appropriately documented her application of the technique.
8  Keyser, 648 F.3d at 725 (citing 20 C.F.R. § 404.1520a(e)(4)).  The ALJ discussed Plaintiff's
9  medical examinations, the persuasiveness of his medical professionals' opinions, and his
10 daily activities.  (AR 24-25.)  Accordingly, the ALJ satisfactorily incorporated Plaintiff's
11 "significant history [with anxiety disorder], including examination and laboratory
12 findings . . . ."  20 C.F.R. § 404.1520a.

13         Substantial evidence supports the ALJ's conclusion that Plaintiff's anxiety disorder
14 was non-severe, since none of the functional areas would have amounted to anything
15 more than a mild limitation.  The Court is not convinced that the additional record
16 evidence Plaintiff cited would have resulted in a higher rating for any of the functional
17 areas, especially since the ALJ already determined that Plaintiff's memory loss was
18 "otherwise normal" [AR 24], and she already determined Plaintiff's cardiac impairments
19 were severe [id.], so considering those physical manifestations in the mental
20 impairments would have been redundant.[5]  Nonetheless, because the ALJ erred in
21 making nonspecific ratings on the degree of limitations in each functional area, the
22 question now is whether the ALJ's failure to fully comply with the special technique was
23 harmless error.

---

[5] Plaintiff also points out that the reviewing State Agency physician initially determined that his anxiety was a "severe impairment."  (Mot. at 18.)  The Commissioner believes this was a "scrivener's error" because Plaintiff's spinal impairment was listed as non-severe on the same page.  (Opp'n at 14.)  Based on the record, the Court believes the Commissioner's explanation is the most likely justification for the inconsistency.

Keyser states that "failure to comply with 20 C.F.R. § 404.1520a is not harmless if the claimant has a 'colorable claim of mental impairment.'" Keyser, 648 F.3d at 726 (quoting Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir.2000), superseded by amendments to 20 C.F.R. § 404.1520a).  However, that standard does not make sense in this context.  Unlike in Keyser, the ALJ here does not deny that Plaintiff has a mental impairment.  Instead, the Commissioner advocates that Buck v. Berryhill should control here, which states that claimants "could not possibly have been prejudiced" at step two when step two was decided in their favor.  (Opp'n at 16 (citing Buck, 869 F.3d at 1049).)

The court in Craig H. v. Kijakazi aptly synthesizes Buck's ruling.  Because the RFC "'should be exactly the same regardless of whether certain impairments are considered 'severe' or not' . . . [,] a claimant generally cannot be prejudiced by the ALJ's failure to consider a particular impairment as severe at step two, as long as the ALJ finds that the claimant has at least one severe impairment, and still addresses the non-severe impairment when considering the claimant's RFC." Craig H. v. Kijakazi, No. 22CV800-AJB(LR), 2023 WL 4679342, at *11 (S.D. Cal. July 21, 2023) (quoting Buck, 869 F.3d at 1049).

While the ALJ ultimately found step two in Plaintiff's favor, which allowed the ALJ to proceed to sequential steps, the ALJ did not adequately address Plaintiff's non-severe impairment.

### b. The ALJ's failure to include Plaintiff's mental impairment in the RFC assessment was reversible error

The ALJ did not include any explanation for why Plaintiff's non-severe anxiety was excluded in the RFC.  (See AR 26-29.)  Ninth Circuit courts have held that the ALJ's decision must include some discussion or analysis of how an individual's non-severe mental impairments were factored into the ultimate RFC determination. Hutton v. Astrue, 491 F. App'x 850, 850 (9th Cir. 2012) ("Regardless of [the mental limitation's] severity, however, the ALJ was still required to consider [plaintiff's mental limitation] when he determined [plaintiff's] RFC"); Patricia C. v. Saul, 19cv636-JM (JLB), 2020 WL

4596757, at *13 (S.D. Cal. Aug. 11, 2020) (finding error where the ALJ incorporated the step two analysis into the RFC analysis, rather than performing a "more detailed" review).

The failure to assess a claimant's mental impairments has resulted in reversal in many cases in this circuit. See Janice H. v. O'Malley, No. 22CV1833-W (MSB), 2024 WL 709395, at *6 (S.D. Cal. Feb. 21, 2024); Craig H., 2023 WL 4679342, at *12 (reversing where "the ALJ's discussion of Plaintiff's RFC contain[ed] no analysis of Plaintiff's mild mental limitations"); Kitty S. v. Kijakazi, No. EDCV 21-00390-JEM, 2022 WL 2117160, at *5-7 (C.D. Cal. June 13, 2022) (reversing where the ALJ made "mild step two paragraph B findings" but did not discuss plaintiff's mental impairments when assessing RFC). Without such analysis, the Court is precluded from evaluating whether the ALJ properly considered Plaintiff's non-severe impairments when formulating the RFC. See Craig H., 2023 WL 4679342 at *13 (finding that the court was precluded from "properly evaluating . . . whether the ALJ properly discussed the limitations that he found to be non-severe in formulating Plaintiff's RFC"); see also, Nasery v. Colvin, No. 16CV1534-CAB-KSC, 2017 WL 3393834, at *21 (S.D. Cal. Aug. 4, 2017) (finding that "it [was] not possible to determine whether the ALJ actually considered any such 'mild limitation' in plaintiff's mental functioning as part of her residual functional capacity assessment."). The Court's ability to properly evaluate the ALJ's decision is further clouded by the ALJ's failure to give specific degrees of limitation for each functional area. For example, had the ALJ rated all but one functional area as having no limitations, then perhaps the Court would have been able to determine why the ALJ did not include Plaintiff's mental impairment in the RFC.

Like in Craig H., the ALJ here used boilerplate language at the conclusion of step two: "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (AR 25.) However, merely stating Plaintiff's mental limitations were incorporated into the RFC is far from sufficient. See Craig H., 2023 WL 4679342 at *13. Even though the ALJ

here discusses the persuasiveness of medical opinions in support of her paragraph B criteria analysis, the ALJ failed to explain "<u>why</u> none of Plaintiff's mental limitations were ultimately discussed in the RFC assessment." <u>Id.</u>  While the ALJ did not need to reflect mild mental impairments in the ultimate RFC, she should have "specifie[d] reasons supported by substantial evidence for not including the non-severe impairment in the RFC assessment."  <u>See</u> <u>Medlock v. Colvin</u>, No. CV 15-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016).  The ALJ's failure to include specific ratings at step two and discuss Plaintiff's mild mental impairments in the RFC assessment impedes this Court's ability to properly determine whether the RFC was supported by substantial evidence.  These errors were thus not harmless.

### C.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated:  February 27, 2025

Honorable Michael S. Berg
United States Magistrate Judge